# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| MELISSA LYNN, | |
| Plaintiff, | Case No. 15-cv-7041 |
| v. | Judge John Robert Blakey |
| UNITED AIRLINES, INC., | |
| Defendant. | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Melissa Lynn initiated this personal injury suit against Defendant United Airlines, Inc. in the Circuit Court of Cook County on July 15, 2015. [1-1] at 1. Defendant removed the case to this Court on August 12, 2015. [1]. Defendant moved for summary judgment on the grounds that Lynn's injury was not the result of an "accident" within the meaning of the treaty governing air carrier liability on international flights. [50]; [52] at 15. As discussed below, genuine issues of material fact exist in the record, and therefore, Defendant's motion is denied.

## I. Background[1]

On July 19, 2013, Plaintiff Melissa Lynn was a passenger on United Airlines Flight 906, traveling from Frankfurt, Germany, to Chicago O'Hare International Airport. DSOF at ¶ 1; [1-1] at 2. Plaintiff was seated in an aisle seat in the economy section. DSOF at ¶ 6. As Flight 906 approached O'Hare in its final

---

[1] The facts are taken from the parties' Local Rule 56.1 statements. "DSOF" refers to United's statement of undisputed facts, [51], and "PSAF" refers to Lynn's statement of additional material facts, [55]. References to additional filings are by docket number.

descent, an overhead luggage bin across the aisle from Plaintiff "popped open." *Id*. at ¶ 17, Ex. B at 18. Plaintiff saw a mother with a small child in her lap seated below the open overhead bin. *Id*. at ¶ 19. Plaintiff waited, but when none of the flight crew came to close the bin she unfastened her seatbelt and stood up to close the bin. *Id*. at ¶¶ 14, 17, Ex. B at 18. As she reached out to close the overhead bin, the plane landed, wrenching her outstretched right arm and fracturing her shoulder. DSOF at ¶¶ 28, 29, Ex. B. at 34; PSAF at ¶ 5.

When Plaintiff stood to close the overhead bin, the plane had begun its final descent and the fasten seatbelt sign was on. DSOF at ¶¶ 9, 10. Prior to descent, the flight crew had instructed passengers to remain seated with their seatbelts fastened for the remainder of the flight; the crew then strapped themselves into their jump seats, pursuant to Federal Aviation Administration (FAA) regulations. *Id*. at ¶¶ 7–10. Plaintiff knew that the plane was in its final descent, the fasten seatbelt sign was on, and that it was unsafe to move around the cabin. *Id*. at ¶¶ 9, 11–14. Plaintiff did not alert any crew member or the mother below the open bin before standing up, *Id*. at ¶ 21–23, though one crew member later acknowledged that he saw that the bin was open, DSOF Ex. B at 27–31; PSAF at ¶ 8. Flight crew are required to check that overhead bins are securely closed before the plane begins its final descent. PSAF at ¶¶ 11–14.

When Plaintiff disembarked, her arm was "not usable." *Id*. Ex. 3 at 41. After visiting an urgent care clinic, Plaintiff was diagnosed with a fracture in her shoulder and inflammation. PSAF Ex. 3 at 46–47. Continued pain led Plaintiff to

have shoulder surgery in August 2013, and a disk replacement in her cervical spine in June 2014. *Id*. Ex. 3 at 45–55, 56–57. She subsequently brought this suit under the Convention for the Unification of Certain Rules for International Carriage by Air, May 28, 1999, 2242 U.N.T.S. 309 (Montreal Convention), which exclusively determines the liability of air carriers on international flights. *See El Al Israel Airlines, Ltd. v. Tsui Yuan Tseng*, 525 U.S. 155, 160, 176 (1999). Plaintiff seeks recovery under Article 17(1) of the Montreal Convention, which makes air carriers liable for any "accident" causing the bodily injury of a passenger on an aircraft. [1-1] at 2–3.

On May 15, 2017, Defendant moved for summary judgment [50], on the grounds that Plaintiff's injuries were not the result of an "accident" within the meaning of Article 17 of the Montreal Convention, [51] at 5, 15.

## II. Legal Standard

A motion for summary judgment can be granted only when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). A genuine dispute of material fact exists where "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The party seeking summary judgment has the burden of establishing that there is no genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The motion will be granted only if, viewing the record in the light most favorable to the nonmoving party, no jury could reasonably find in the nonmoving party's favor. *McDonald v. Hardy*, 821 F.3d 882, 888 (7th Cir. 2016).

## III. Analysis

In its motion for summary judgment, Defendant raises a single issue: Did Plaintiff's injury result from an "accident" within the meaning of Article 17(1) of the Montreal Convention, as that term has been interpreted by the Supreme Court? Under Article 17, an accident has occurred where "a passenger's injury is caused by an unexpected or unusual event or happening that is external to the passenger." *Air France v. Saks*, 470 U.S. 392, 405 (1985). That "event or happening" need not be one sole event, however, because "any injury is the product of a chain of causes" and thus the plaintiff "need only prove that 'some link in the chain was an unusual or unexpected event external to the passenger.'" *Olympic Airways v. Husain*, 540 U.S. 644, 651 (2004) (quoting *Saks*, 470 U.S. at 406). Applying this definition "flexibly," *Saks*, 470 U.S. at 405, this Court finds that a jury could reasonably determine that Plaintiff's injury constituted an "accident" under Article 17(1).[2]

### A. The Unexpected, External Event

Defendant contends that Lynn's injury cannot constitute an "accident" under the Montreal Convention because no "unexpected or unusual event" occurred that was "external" to Lynn: Flight 906's descent was a normal aircraft operation and Lynn's injury was caused by her own "internal" decision to leave her seat rather than any external event. Dkt. 52 at 8, 10. This Court considers both points in turn.

---

[2] The Supreme Court's rulings on Article 17 interpreted the Warsaw Convention, which was replaced by the Montreal Convention in 2003. Because many provisions of the treaties are substantively unchanged—including Article 17—courts rely on jurisprudence interpreting the Warsaw Convention to construe the Montreal Convention. *See Phifer v. Icelandair*, 652 F.3d 1222, 1224 n.1 (9th Cir. 2011); *Sompo Japan Ins., Inc. v. Nippon Cargo Airlines Co., Ltd.*, 522 F.3d 776, 780–81 (7th Cir. 2008); *Ehrlich v. Am. Airlines*, 360 F.3d 366, 371–71 (2d Cir. 2004).

4

First, Defendant argues that the events of Plaintiff's injury lacked the "unexpected or unusual event" required by *Saks*. 470 U.S. at 405. In *Saks*, the Supreme Court stated that "when the injury indisputably results from the passenger's own internal reaction to the usual, normal and expected operation of the aircraft, it has not been caused by an accident." *Id.* at 406. Because Saks' injury—hearing loss—was a reaction to a "normal" descent, it was not the result of an "accident." *Id.* at 394, 396. Defendant therefore urges that Plaintiff's injury in the course of a normal descent precludes finding an accident within the meaning of Article 17(1). Dkt. 52 at 10.

Defendant's argument attempts to restrict this Court's focus solely to the mechanics of Flight 906's descent. The Supreme Court's interpretation of Article 17(1), however, fails to support this constrained view and instead requires consideration of "all the circumstances surrounding a passenger's injuries." *Saks*, 470 U.S. at 405. Moreover, the Court has repeatedly emphasized that, because "there are often multiple interrelated factual events that combine to cause any given injury," plaintiffs need only show that "some link" in the "chain of causes" was an "unusual or unexpected event." *Husain*, 540 U.S. at 652–53 (citing *Saks*, 470 U.S. at 406).

Under the requisite standard, a reasonable jury could find here that when the overhead bin (which should have been secured) actually popped open during an otherwise ordinary descent, it constituted a "link" in the causal chain that was "unusual or unexpected" under the *Saks* test. Certainly, the record contains

5

genuine material issues as to how "unexpected" it is for an overhead bin to pop open. For example, one flight attendant noted that overhead bins "sometimes open up in turbulence" or when a bin is improperly closed, DSOF Ex. D at 11, while Defendant's current Manager Inflight Safety stated that she never saw an overhead bin pop open in nine years as a flight attendant, PSAF Ex. 1 at 23. Likewise, the record also leaves open questions as to how "unusual" it is that none of the flight crew got up to close the bin, which FAA regulations permit them to do based upon their assessment of "situationally dependent" safety factors. DSOF Ex. C at 10–13. That failure to intervene could also constitute (alone or in combination with other factors) an unusual event, particularly where at least one crew member saw that the bin had opened. DOSF Ex. B at 27-31; PSAF at ¶ 8. Clearly, an air carrier's failure to act may constitute an "accident" within the meaning of Article 17(1). *Husain*, 540 U.S. at 656. Given this record, a jury could well conclude that an overhead bin popping open—and remaining open—was "unusual or unexpected." This Court therefore cannot rule as a matter of law that Plaintiff has failed to satisfy this aspect of an accident under *Saks*.

Defendant also contends that Plaintiff's decision to leave her seat during Flight 906's descent caused her injury, and because that decision was an "internal response" it fails the "external event" requirement. Dkt. 52 at 8. Again, however, Defendant adopts an overly restrictive approach to the evidence. The "external event" can reasonably be viewed as the bin popping open. As long as that undeniably "external" event forms part of the causal chain, the *Saks* externality

requirement is satisfied. *See Husain*, 540 U.S. at 653-55. A subsequent event may sever that chain—as discussed below—but until that has been proved, the existence of subsequent internal reactions does not change the decidedly "external" nature of the overhead bin popping open.

Decisions from other districts cited by Defendant do not alter this analysis. *Zarlin v. Air France* involved a passenger who was reseated as a result of a dispute with another passenger. *Zarlin v. Air France*, No. 04-cv-07408, 2007 WL 2585061 at *1 (S.D.N.Y. Sept. 6, 2007). Zarlin then voluntarily returned to her original seat, where she was injured by the other passenger. *Id*. Such acts do not clearly establish any "external" event, and in any case, that court based its ruling upon a lack of causation, not the lack of an external event. *Id*. at *5. In *Cush v. BWIA International Airways*, a passenger was injured while being removed from a plane after disobeying a mandatory order to disembark. *Cush v. BWIA International Airways, Ltd.*, 175 F. Supp. 2d 483, 488 (E.D.N.Y. 2001). The sole "event" there was the passenger's voluntary action—resisting his obligation to disembark. This again differs from the circumstances of Lynn's injury, in which her decision to leave her seat resulted from a clearly external event: the opening of the overhead bin. In short, on summary judgment, this Court cannot conclude that the open bin was not a qualifying external event under *Saks*.

**B. The Causal Chain**

Defendant also claims that it cannot be liable under Article 17(1) because Plaintiff's voluntary decision to leave her seat severed any causal chain involving Defendant's aircraft or crew. Dkt. 52 at 8. In other words, Defendant argues that it

cannot be the proximate cause of Plaintiff's injuries because her intervening actions broke the chain of causation under ordinary principles of tort. *See id.* at 7–8. If so, any events prior to Plaintiff's intervening act—such as the opening of the overhead bin—could no longer be the basis of Defendant's liability.

A number of courts interpreting Article 17(1) have found that proximate cause analysis applies. *See, e.g.*, *DeMarines v. KLM Royal Dutch Airlines*, 580 F.2d 1193, 1196 (3d Cir. 1978); *Dizon v. Asiana Airlines, Inc.*, 240 F. Supp. 3d 1036, 1045 (C.D. Cal. 2017); *Tsevas v. Delta Airlines, Inc.*, No. 97-C-0320, 1997 WL 767278 at *3–4 (N.D. Ill. Dec. 1, 1997); *Margrave v. British Airways*, 643 F. Supp. 510, 512 (S.D.N.Y. 1986). Others have simply analyzed whether or not the airline played a "causal role" in a passenger's injury. *See Arellano v. American Airlines, Inc.*, 69 F. Supp. 3d 1345, 1350–51 (S.D. Fla. 2014).

The Seventh Circuit has not yet addressed the issue, and the two Supreme Court cases to construe Article 17—*Saks* and *Husain*—did not involve a proximate cause analysis. In *Saks*, the Court considered whether hearing loss caused by a normal descent could constitute an accident, but the Court did not address the lower courts' findings that the descent constituted a proximate cause of the hearing loss under Article 17(1). 470 U.S. at 395, 396. In *Husain*, the Court discussed causation in general terms only, using the language from *Saks* about passengers needing only to show that "some link" in the "chain of causes" was "an unusual or unexpected event external to the passenger." *Husain*, 540 U.S. at 651 (citing *Saks*, 470 U.S. at 406). Finding the airline's failure to move Husain from a smoking

8

section despite his asthma to be an "unusual event" under *Saks*, the Court stated that the "exposure to the smoke and the refusal to assist the passenger are happenings that both contributed to the passenger's death." *Husain*, 540 U.S. at 655.

In light of *Saks* and *Husain*, whether a qualifying "unexpected" event sufficiently contributes to a passenger's injuries within the meaning of Article 17(1) remains a fact-intensive inquiry. In general, the federal common law requires a "direct relation between the injury asserted and the injurious conduct alleged." *McBride v. CSX Transp., Inc.*, 598 F.3d 388 n.3 (7th Cir. 2010) (quoting *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)). Here, Plaintiff's decision to stand may well have cut off Defendant's responsibility for her injury, but this issue remains a question for the jury to decide where, as a matter of law, the open bin may have been a contributing cause within the chain of events. *See Husain*, 540 U.S. at 654; *Scottsdale Ins. Co. v. Subscription Plus, Inc.*, 299 F.3d 618, 621 (7th Cir. 2002) (Posner, J.) (an intervening cause can sever that direct relation if it is "an unforeseeable consequence" of the defendant's misconduct).

At a minimum, as the undisputed portions of the record make clear, Plaintiff stood only because she saw an overhead bin pop open above a small child during landing. DSOF ¶ 17, 19, Ex. B at 18. The relevant question is not whether Plaintiff acted "of her own volition," [52] at 10, but whether her actions were a foreseeable result of the bin popping open. Indeed, at common law, attempting to rescue a person "who has been placed in a dangerous position" is "always foreseeable" and in

9

certain circumstances, the rescue doctrine allows injured rescuers to recover from the party who endangered the rescued person. *See, e.g.*, *Strickland v. Kotecki*, 913 N.E.2d 80, 83 (Ill. App. Ct. 2009) (quoting *Williams v. Foster*, 666 N.E.2d 678, 681 (Ill. App. Ct. 1996)). Whether the doctrine applies, however, is "generally a question for the jury." *Id*. Against this backdrop, a jury could reasonably find it foreseeable that a passenger would rise to remedy the situation, particularly where no crew member took action.

Finally, the cases cited by Defendant for the proposition that Plaintiff's acts sever the causal chain are inapposite. *Cush* and *Zarlin* involved purely interpersonal interactions with the plaintiff passenger, unrelated to any physical risk present on the aircraft. *See Cush*, 175 F. Supp. 2d at 487–88; *Zarlin*, 2007 WL 2585061 at *5. In *Cush*, a passenger obligated to disembark refused to do so; the court therefore reasonably determined that the cause of his injury began and ended with the plaintiff. 175 F. Supp. 2d at 487–88. Similarly, Zarlin's injuries were caused by her unprompted decision to return to her seat behind the passenger with whom she was engaged in an altercation. *Zarlin*, 2007 WL 2585061 at *5.

Neither *Cush* nor *Zarlin* involves the interaction of causal factors at play in Plaintiff's injury, which more closely resembles the line of cases finding Article 17(1) liability where some event in the airline's control combined with a passenger's actions to result in injury. *See Maxwell v. Aer Lingus Ltd.*, 122 F. Supp. 2d 210, 212 & n.5 (D. Mass. 2000) (listing cases). Those courts imposed liability in such mixed cases because "the carrier is in a far superior position than are passengers to

10

institute protective safeguards." *Id.* (citing *Day v. TransWorld Airlines, Inc.*, 528 F.2d 31, 34 (2d Cir. 1975)).

The same is true of the open overhead bin here. In fact, flight crews must inspect and ensure that all overhead bins are closed before final descent, DSOF Ex. D at 10, PSAF at ¶¶ 11–14, and overhead bins pop open if they are not properly secured or if they experience "mechanical issues," *id.* at ¶¶ 15, 17. Consequently, a jury could reasonably determine that both Lynn's actions and her injury were a direct and proximate result of some negligence or malfunction attributable to Defendant. The question is unsettled at this stage of the proceedings. Where the evidence is inconclusive, "it is for the trier of fact to decide whether an 'accident' as here defined caused the passenger's injury." *Saks*, 470 U.S. at 405.

## IV. Conclusion

Defendant's motion for summary judgment [50] is denied.

Dated: October 2, 2017

Entered:

_____
John Robert Blakey
United States District Judge